RICHARD M. ROGERS, #045843
MAYO & ROGERS
114 Sansome Street, #1310
San Francisco, CA 94104
Telephone:     415/397-1515
Facsimile:     415/397-1540

Attorneys for Plaintiff
DAVID CHURCHILL

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHURCHILL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WINTER CHEVROLET COMPANY,<br>INC., AND ROSE WINTER,<br><br>　　　　Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Comes now Plaintiff DAVID CHURCHILL, and alleges:

## JURISDICTION

1.　　　　The Court has jurisdiction over this action because Plaintiff is a citizen of the State of Nevada while Defendants are citizens of the State of California and the matter in controversy exceeds the sum of $75,000.

## VENUE

2.　　　　Venue is proper in this Court in that it involves fraud and breach of an employment contract in Pittsburg, California.

//

# FIRST CAUSE OF ACTION
### (Fraud)

3.      Defendant ROSE WINTER ("Winter") is the principal shareholder in Defendant WINTER CHEVROLET COMPANY, INC. ("Winter Chevrolet"), a California corporation.

4.      Defendants induced Plaintiff to resign his then employment and to enter into an employment relationship with Defendant Winter Chevrolet by falsely representing that he would be compensated in accordance with the first nine provisions of the February 28, 2000, contract, a copy of which is attached hereto as Exhibit 1 and incorporated herein by this reference.   The original agreement is attached hereto as Exhibit 2 and incorporated herein by this reference.

5.      In reliance upon the false representations, Plaintiff resigned from his then employment and agreed to work for Defendants.

6.      After Plaintiff resigned from his then employment, Defendants inserted Paragraph 10 in Exhibit 1 hereto.  Defendant Winter assured Plaintiff that Paragraph 10 would not be a problem. Plaintiff thereupon commenced his employment with Defendants in March, 2000.

7.      Defendants knew, at the time the representations were made, that they were false, to wit: Defendant Winter would not acquire 49% of the stock, Defendant Winter would not transfer any stock to Plaintiff, and Defendant Winter would not perform her obligations under Exhibits 1 and 2. In the alternative, if Defendants did not know the representations were false in February, 2000, they subsequently learned the representations were false and concealed the true facts from Plaintiff in order to induce him to continue working for them.  Defendants certainly had this knowledge by September, 2000.

8.      Over the next three years, from March, 2000, until June, 2003, Plaintiff was continuously assured that the stock plan and buy-sell agreement were being worked out and would be implemented.  In reliance on these assurances, Plaintiff continued to perform his employment duties.

//

//

---

CHURCHILL/
COMPLAIN.DOC.wpd

Complaint for Damages; Demand for Jury Trial

2

9.    In January, 2002, Defendants induced Plaintiff to enter into another contract, a copy of which is attached hereto as Exhibit 3, by falsely representing that the stock transfer and buy-sell agreement were almost ready and would be contained in a separate agreement.

10.    In June, 2003, Defendant Winter told Plaintiff she would not transfer any equity nor enter into a buy-sell agreement.

11.    In July, 2003, after Defendants refused to honor their commitments, Plaintiff's employment was terminated.

12.    Plaintiff, in consequence of the foregoing, has been deprived of ownership of twenty percent (20%) of the business, to his damage in excess of $5,000,000.00.

13.    As a direct result of Defendants' said conduct, Plaintiff has suffered and will continue to suffer emotional distress to his general damage in an amount within the jurisdiction of this Court.

14.    Defendants' said conduct was outrageous, despicable, malicious, oppressive, fraudulent and beyond the bounds tolerated by a civilized community, by reason of which Plaintiff demands exemplary and punitive damages. Defendants, and each of them, intended to harm Plaintiff.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

15.    Plaintiff incorporates by this reference Paragraphs 3 through 12 of his First Cause of Action.

16.    Defendants, by their acts and omissions, breached the contract attached hereto as Exhibit 1 and their oral representations that it would be implemented.

## THIRD CAUSE OF ACTION
### (Wage Claim)

17.    Plaintiff incorporates by this reference Paragraphs 3 through 11 of his First Cause of Action.

18.    Defendants have refused to pay Plaintiff his 2003 bonus pursuant to Paragraph 7 of Exhibit 3 hereto and to pay all of Plaintiff's accrued vacation, to Plaintiff's damage in an amount in excess of $428,000.00.

CHURCHILL/
COMPLAIN.DOC.wpd

Complaint for Damages; Demand for Jury Trial

19.   Defendants have violated Labor Code section 206.

### STATUTORY PENALTIES, ATTORNEY'S FEES

20.   Plaintiff is entitled to recover statutory penalties pursuant to Cal. Labor Code section 203.

21.   Plaintiff is entitled to recover attorney's fees, costs, and interest pursuant to Cal. Labor Code sections 218.5 and 218.6.

WHEREFORE, Plaintiff prays for:

1.   Economic damages in excess of $5,428,000.00;

2.   Non-economic damages in an amount to be determined by the Court;

3.   Punitive damages in an amount to be determined by the Court;

4.   Statutory penalties, interest, attorney's fees and costs; and

5.   Such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: _2-4-04_                        MAYO & ROGERS

By _____

RICHARD M. ROGERS
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: _2-4-04_                        MAYO & ROGERS

By _____

RICHARD M. ROGERS

Attorneys for Plaintiff



 

2101 RAILROAD AVENUE • P.O. BOX 31 • PITTSBURG, CALIFORNIA 94565-0231 • (925) 439-8222 • 1 (800) 479-5779 • FAX (925) 427-3082

Winter Chevrolet Co., Inc.
General Manager Pay Plan
Page 1

Effective Immediately:

1.    Base Salary - $8,000 per month (½ on 15th and ½ on 31st)

2.    One vehicle plus gas

3.    Monthly bonus of 15% of net profit after owner and GM Base Salary and
      before net income taxes, payable 10% monthly with balance payable at
      end of year after year end review by accountants

4.    Guaranteed minimum for 1st three months of $15,000 per month (base plus
      15%)

5.    Annual bonus as follows:

      Net Profit Before Income Taxes              Bonus

            0 – 350,000                           None
            350,000 – 450,000                     5% of Layer
            450,000 – 750,000                     6% of Layer
            750,000 – 1,000,000                   7% of Layer
            1,000,000 – 1,500,000                 8% of Layer
            Over 1,500,000                        9% of Layer

_____              _____2/28/00_____
David Churchill, General Manager                 Date

_____              _____2/28/00_____
Rose Winter, President                           Date

**EXHIBIT** 1





2101 RAILROAD AVENUE • P.O. BOX 31 • PITTSBURG, CALIFORNIA 94565 0231 • (925) 439-8222 • 1 (800) 479-5779 • FAX: (925) 427-3082

Winter Chevrolet Co., Inc.
General Manager Pay Plan
Page 2

Effective Six Months from Date Signed:

6.     Required purchase of 4% after six months employment-terms are 50%
       down, balance payable over 4 years in equal monthly installments with
       interest at 7%-at appraised value

7.     Additional annual bonus of 4% of corporate stock for 4 years

8.     Buy-Sell Agreement for death, disability or separation from service.
       Within first four years, Rose buys back stock at David's purchase price.
       Thereafter at appraised value.   David has the right to buy Rose's stock at
       appraised value in the event of her death or disability.  David has the right
       of first refusal if Rose decides to sell.

9.     Rose gets annual bonus of 25% of net profit before income taxes

10.    Rose is currently in the process of obtaining appraisal on the dealership.
       Upon completion she will acquire 49% of stock which is now held by
       trusts created at her husband's death.  She is the trustee of the trusts.  No
       stock can be transferred to David until the 49% is acquired by Rose.


_____                    2/28/00
David Churchill, General Manager                    _____
                                                    Date

_____                    2/28/00
Rose Winter, President                              _____
                                                    Date

 

Winter Chevrolet Co., Inc.
General Manager Pay Plan

1. Base Salary - $8,000 per month (½ on 15th and ½ on 31st)

2. One vehicle plus gas

3. Monthly bonus of 15% of net profit after owner and GM Base Salary and before net income taxes, payable 10% monthly with balance payable at end of year after year end review by accountants

4. Guaranteed minimum for 1st three months of $15,000 per month (base plus 15%)

5. Annual bonus as follows:

| Net Profit Before Income Taxes | Bonus |
|---|---|
| 0 – 350,000 | None |
| 350,000 - 450,000 | 5% of Layer |
| 450,000 – 750,000 | 6% of Layer |
| 750,000 - 1,000,000 | 7% of Layer |
| 1,000,000 – 1,500,000 | 8% of Layer |
| Over 1,500,000 | 9% of Layer |

6. Required purchase of 4% after six months.

7. Additional annual bonus of 4% of corporate stock for 4 years

8. Buy-Sell Agreement for death, disability or separation from service. Within first four years, Rose buys back stock at David's purchase price. Thereafter at appraised value. David has the right to buy Rose's stock at appraised value in the event of her death or disability. David has the right of first refusal if Rose decides to sell.

9. Rose gets annual bonus of 2.5% of net profit before income taxes.

2/18/00 FAXED TO DAVID C.    510 659·9555

EXHIBIT 2

# EMPLOYMENT AGREEMENT

THIS AGREEMENT is made effective January 1, 2002, by and between DAVID CHURCHILL, (hereinafter called "Employee"), and WINTER CHEVROLET CO., INC., a California Corporation, (hereinafter called "Corporation").

1.   <u>Employment Agreement</u>.  Corporation hereby agrees to employ Employee, and Employee hereby agrees to serve as such Employee upon the terms and conditions hereinafter set forth.

2.   <u>At Will Employment</u>.  Employee understands and agrees that his employment is for no definite period of time and may, regardless of the date of payment of wages and salary, be terminated at any time without prior notice.

3.   <u>Employee's Position and Duties</u>.   Employee shall be employed as Corporation's General Manager, at 2101 Railroad Avenue, Pittsburgh, CA, or at such other place or places as from time to time designated by the Board of Directors of Corporation.  Employee shall devote his full time, energy and abilities to the proper and efficient performance of the duties of his employment.  Without prior express authority of Corporation's Board of Directors, Employee shall not, directly or indirectly, during the term of this Agreement:  (a) render services of a business or commercial nature to any other person or firm, whether for compensation or otherwise; or (b) engage in any activities competitive with or adverse to Corporation's business or welfare, whether alone, as a partner, or as an officer, director, employee or shareholder of more than ten percent of the stock of any other corporation; provided, however, that should Employee perform  services, to any other person or firm for compensation, all such compensation  shall be paid over to Corporation by Employee. From and after January 1, 2003, if Employee is terminated  for any reason thereafter, for five (5) years following his termination as an Employee, Employee agrees that he will not, directly or indirectly, own an interest in, operate, join, control or participate in, or be connected as an officer, employee, agent, independent contractor, partner, shareholder or principal of any corporation, partnership, proprietorship, firm, association, person or other entity competing with Corporation's products or Corporation's business within fifty (50) miles from the Corporation's principal place of business. During such five (5) year period following termination as an Employee of Corporation, Employee agrees not to undertake any employment or activity competitive with Corporation's business in which the loyal and complete fulfillment of the duties of the competitive employment or

-1-


EXHIBIT 3

activity would call on Employee to reveal, to make judgments on, or otherwise to use any confidential business information or trade secrets of Corporation's business to which Employee had access by reason of Corporation's business.

4.    Compensation.  Employee shall receive a salary of $8,000 per month until such time as his salary is adjusted by action of the Board of Directors of Corporation.  Said salary shall be paid to Employee on the 15th and 31st or the last business day immediately preceding such date.

5.    Reimbursable Expenses.  Corporation shall reimburse Employee for the following expenses:

a)    License fees and membership dues for associations or organizations relative to Corporation's business.

b)    Subscriptions to journals or monthly service publications relative to Corporation's business.

c)    Employee's necessary travel, hotel and entertainment expenses incurred in connection with Corporation's business or other events that contribute to the benefit of Corporation, in amounts to be determined by the Board of Directors.

d)    All other expense incurred by the Employee in or about the course of his employment with the Corporation.

6.    Business Automobile.  Corporation shall provide a vehicle for Employee to be used by Employee for Corporate business.  Corporation shall also provide Employee with fuel for such vehicle.

7.    Bonus.  In addition to his monthly salary, Employee shall receive a bonus. He shall be entitled to an immediate bonus of one hundred fifty thousand ($150,000.00) dollars for his services rendered during the 2000 - 2001 fiscal years of Corporation. Thereafter, Employee shall receive an annual bonus equal to a percentage of the federal taxable income of Corporation before owner's bonus and before such bonus as follows:

| Year | Percent |
|------|---------|
| 2002 | 26% |
| 2003 | 29% |
| 2004 | 31% |
| 2005 and thereafter | 32% |

-2-

8.    Employment Benefits.  Employee shall be entitled to all of the standard company benefits provided to other Corporate Employees.

9.    Arbitration.  Any claim or controversy arising out of or relating to any provision of this agreement, or the breach thereof, shall, upon written demand of either party, be settled by arbitration in accordance with the Commercial Arbitration Rules then in effect of the American Arbitration Association, to the extent consistent with the laws of the State of California, and judgment upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.  Arbitration proceedings shall be conducted in the County of Contra Costa, State of California.

10.    Modification.  No change or modification of this agreement shall be valid unless it is in writing and signed by all the parties hereto.

11.    Binding Effect..  The contract shall be binding upon the heirs, executors, administrators, and assigns of Employee and any successors in interest of Corporation.

12.    Partial Invalidity.  If any part of this Agreement shall be determined by competent authorities to be invalid, the remainder hereof shall be construed as if the invalid portion had been omitted.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first written above.

WINTER CHEVROLET, a California corporation

BY:    ROSE C. WINTER, President

BY:    LENORE NELSON, Secretary

EMPLOYEE:

DAVID CHURCHILL

-3-